IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| DANIEL JONES, | ) |
| | ) |
| Plaintiff, | )   2:24-CV-01205-MJH |
| | ) |
| vs. | ) |
| | ) |
| SEVEN POINT ENERGY SERVICES, INC., | ) |
| | ) |
| Defendant, | |

## MEMORANDUM OPINION

On August 23, 2024, Plaintiff, Daniel Jones, filed this suit against Seven Point Energy Services, Inc. ("Seven Point") (ECF No. 1). On November 18, 2024, Plaintiff filed an Amended Complaint, bringing two claims, for race-based discrimination and retaliation under 42 U.S.C. § 1981. (ECF No. 10).[1] On December 20, 2024, Seven Point filed a Motion to Dismiss, Motion to Strike, and accompanying brief. (ECF Nos. 16 & 17). On January 10, 2025, Mr. Jones filed a Brief in Opposition to Seven Point's Motion to Dismiss and Motion to Strike. (ECF No. 19). On January 17, 2025, Seven Point filed its Reply. (ECF No. 20). All issues are ripe and ready for disposition. For the reasons below, Seven Point's Motion to Dismiss and Motion to Strike will be granted in full.

**I.      Statement of Facts**

---

[1] In its Motion to Dismiss, Seven Point argues that Mr. Jones fails to establish a hostile work environment claim under § 1981. (ECF No. 17, at 12). It does not seem that the Amended Complaint brings a hostile work environment claim, nor does Mr. Jones argue that he does in his Brief in Opposition to Seven Point's Motion to Dismiss. (ECF No. 19). Thus, the Court does not discuss such claims within this Opinion.

Taking the allegations in the Amended Complaint as true, the relevant facts are as follows.

On or about October of 2018, Plaintiff, Daniel Jones, began his employment at Seven Point Energy as a "Driver." (ECF No. 10, at ¶ 12). Mr. Jones' job duties consisted of driving and transporting production water used in fracking operations. (*Id.* at ¶ 13). Around February 16, 2022, Mr. Jones complained to Duane Arbogst, Seven Point's Operations Manager, about not being paid for an online safety training that Mr. Jones was required to attend. (*Id.* ¶¶ 15-16). On February 23, 2022, Mr. Jones told Human Resources representative, Jennifer Bedillion that he complained to Mr. Abrogast. (*Id.* ¶ 17). On or about February 23, 2022, Mr. Arbogast informed Mr. Jones and Ms. Bedillion that Mr. Jones would not be paid for the online training. (*Id.*). Mr. Jones alleges that Mr. Arbogast told him that he was "tired of [Mr. Jones'] complaining," his "hostility," and his "anger." (*Id.* ¶ 18). Mr. Jones further alleges that Mr. Arbogast told Mr. Jones that "It's time for [him] to find another place to work." (*Id.*). Mr. Jones escalated his complaint regarding non-payment for the online training to Seven Point's owner, Mr. Gonzalez, who met with Mr. Jones, along with Mr. Abrogast, on or about February 24, 2022 (*Id.* ¶ 19). At the February 24, 2022 meeting, Mr. Abrogast reiterated that Mr. Jones was frequently "angry and hostile," which Mr. Jones denied. (*Id.* ¶ 20). Mr. Gonzalez removed Mr. Abrogast from the meeting and eventually paid Mr. Jones for the time he spent on the online training and for the day that Mr. Abrogast sent him home. (*Id.* ¶ 21).

In May 2022, Mr. Jones called off work for three days because he was sick. (*Id.* ¶ 22). When Mr. Jones returned to work, Mr. Abrogast had a night-time supervisor ask Mr. Jones for a doctor's excuse. (*Id.* ¶ 23). Mr. Jones asked Mr. Abrogast why he did not ask him for the excuse himself, and Mr. Abrogast told Mr. Jones that it was because he gets "nervous" when he talks with Mr. Jones and another African American employee, Mike McKoy. (*Id.* ¶ 26). Mr. Jones

2

further alleges that Mr. Abrogast said that Mr. Jones and Mr. McKoy speak "too loudly" and that he would rather not speak with them. Mr. Jones alleges that Mr. Abrogast continued, stating "I'm not racist or anything. Don't take it that way." (*Id. ¶* 27). Mr. Jones alleges that he told Mr. Abrogast that he was being biased. (*Id. ¶* 28).

In September 2022, Mr. Abrogast conducted performance reviews of all the employees under his supervision but would not review Mr. Jones. (*Id. ¶* 30). After Mr. Jones inquired as to why Mr. Abrogast did not conduct a performance review for him, Mr. Abrogast allegedly told Mr. Jones that it was because he wanted to avoid "personal issues" with Mr. Jones. (*Id. ¶* 31). Mr. Jones alleges that he understood the statement by Mr. Abrogast as reluctance to speak to African American employees. (*Id*). Mr. Gonzalez performed Mr. Jones' performance review and gave Mr. Jones a raise. (*Id. ¶¶* 32-33). However, Mr. Jones alleges that he was still paid less than his white coworkers, such as Rex Rossell, who was paid .50 more per hour than Mr. Jones in 2022, was hired two years after Mr. Jones, and performed "comparable work." (*Id. ¶* 34).

In December 2022, Mr. Jones alleges that he provided a doctor's excuse to Mr. Abrogast, which indicated that he would not be at work from December 19, 2022 to December 26, 2022. (*Id. ¶* 37). Mr. Jones alleges that when he returned to work, Mr. Arbogast refused to accept Mr. Jones' doctor's excuse, removed Mr. Jones from the work schedule, accused Mr. Jones of "no call no shows" for the days he took off, and spread rumors that Mr. Jones had been terminated for "stealing time." (*Id. ¶¶* 38-39). Mr. Jones alleges that Mr. Arbogast never refused to accept a doctor's note from or spread accusations of time theft and no call no shows about white employees. (*Id. ¶* 40). On January 9, 2023, Mr. Jones texted Mr. Arbogast, asking whether his employment was terminated. (*Id. ¶* 41). Mr. Jones met with Mr. Arbogast and Mr. Gonzalez and Mr. Arbogast stated that he did not like how Mr. Jones spoke to him. (*Id. ¶* 42). Mr. Jones

alleges that he accused Mr. Arbogast of "being biased and discriminating against him because of his race. (*Id.* ¶ 43). At the meeting, an agreement was made that allowed Mr. Jones to return to work on January 16, 2023. (*Id.*).

On or about May 2, 2023, Mr. Jones arrived at "Battle Phrog," a fracking location in Spraggs, Pennsylvania. (*Id.* ¶ 44). Earle Workman, night-time supervisor at Seven Point, sent Mr. Jones there to complete containment work, which required Mr. Jones to vacuum water around the frack well heads. (*Id.* ¶ 45) When Mr. Jones made it to the wells, it was raining heavily, and the ground was muddy. (*Id.* ¶ 46). Mr. Jones alleges that he noticed that the wells were uncovered and sealed off by caution tape. (*Id.*). Mr. Jones alleges that he understood that Seven Point's policy prohibited him for crossing the caution tape to perform his work. (*Id.* ¶ 47). Mr. Jones further alleges that there were four white workers, employed by EQT, that were on the other side of the caution tape. (*Id.* ¶ 48). Mr. Jones alleges that he heard the EQT workers using "vulgar language and curse words, being typical language used around a frack pad." (*Id.* ¶ 49). Since the workers were on the other side of the caution tape, Mr. Jones asked the workers if they could assist him by running a hose to the well heads, so that he could complete his job and adhere to Seven Point's policy by not crossing the caution tape. (*Id.* ¶ 51). Mr. Jones alleges that the workers were helpful at first but quickly became hostile and began to harass Mr. Jones by covering the hose with gravel. (*Id.* ¶ 53). Mr. Jones further alleges that the workers made comments to him such as "we are not here to do your job" and "you have to come in here and do it yourself." (*Id.* ¶¶ 52, 54). Mr. Jones alleges that he then stated, to no one in particular, "It's fucking dangerous." (*Id.* ¶ 55). Mr. Jones alleges that he performed his work to the best of his ability without crossing the caution tape and then left Battle Phrog. (*Id.* ¶ 56).

After leaving Battle Phrog, Mr. Workman informed Mr. Jones that a representative from EQT contacted Mr. Workman and complained that Mr. Jones used profanity at the jobsite (*Id.* ¶ 59). Mr. Jones alleges that he told Mr. Workman about the treatment he received by the EQT workers. (*Id.*). Mr. Jones alleges that Mr. Workman went to Battle Phrog, did not see any caution tape, and told Mr. Jones that Mr. Arbogast had ordered Mr. Jones to go home. (*Id.* ¶ 61). Mr. Abrogast accused Mr. Jones of using profanity at Battle Phrog and leaving without completing his job. (*Id.* ¶ 62). Mr. Jones requested that Mr. Abrogast review Mr. Jones' truck's audio and video feed to substantiate that the EQT workers had mistreated him. (*Id.* ¶ 63). Mr. Jones alleges that Mr. Abrogast refused to review the truck's video and audio footage, and instead, instructed Mr. Jones to write a statement about the events and go home. (*Id.*).

Mr. Jones alleges that Mr. Abrogast removed Mr. Jones from the work schedule on or about May 3, 2023. (*Id.* ¶ 64). Also on May 3, 2023, Mr. Jones allegedly told Mr. Abrogast that he was being "discriminated against" because of his race because the EQT workers were allowed to use profanity and harass Mr. Jones. (*Id.* ¶ 65). On or about May 5, 2023, Mr. Jones called Mr. Gonzalez to inquire about his employment status. (*Id.* ¶ 66). Mr. Gonzalez said that the matter was still under investigation. (*Id.*). On or about May 8, 2023, Mr. Gonzalez called Mr. Jones and terminated his employment for "using profanity" at Battle Phrog. (*Id.* ¶ 67).

Mr. Jones further alleges that discriminatory conduct continued to occur at Seven Point after his termination. Mr. Jones alleges that, in 2024, on two occasions, white employees at Seven Point called black employees the n-word and were not terminated. (*Id.* ¶¶ 69-72).

## II. Relevant Legal Standards

### A. Rule 12(f) Standard

Pursuant to Federal Rule of Civil Procedure 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The purpose of a motion to strike is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F.Supp.2d 433, 460 (W.D. Pa. 2012) (citation omitted). The movant must show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial. *Flanagan v. Wyndham Int'l, Inc.*, (D.Vi. 2003) (citing 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures, § 1380). Although courts possess considerable discretion in disposing of a motion to strike under Rule 12(f), *Thornton v. UL Enters.*, 2010 WL 1005021, at *2 (W.D. Pa. 2010), "[s]triking some or all of a pleading is [] considered a drastic remedy to be resorted to only when required for the purposes of justice," *Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 443 (W.D.Pa. 2010) (citation omitted). "In deciding the motion, a court should also consider the liberal pleading standards of Rule 8 and the lack of a developed factual record at this early stage of litigation." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F.Supp.2d 404, 407 (W.D. Pa. 2011) (citations omitted). A court will generally not grant such a motion unless the material to be stricken bears "no possible relationship to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.*, 629 F.Supp.2d 416, 425 (D.N.J. 2009) (citations omitted).

**B. Rule 12(b)(6) Standard of Review**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose

7

of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

### C. Discussion

### A. Seven Point's Motion to Strike

As an initial matter, the Court will address Seven Point's Motion to Strike paragraphs 69-74 of the Amended Complaint. These paragraphs consist of the allegations that, in 2024, two white workers used racially derogatory language directed at African American employees at Seven Point and were not terminated for such actions. Seven Point argues that Plaintiff does not have any personal knowledge of the alleged facts and that the alleged events occurred after Mr. Jones' termination and are thus not relevant to the alleged discriminatory acts made against him. (ECF No. 17, at 15). Mr. Jones argues that the allegations contained within the paragraphs at issue describe relevant comparator evidence related to the alleged discriminatory acts taken against him. (ECF No. 19, at 13).

The allegations contained in paragraphs 69-74 are irrelevant to the alleged discriminatory actions taken against Mr. Jones. These paragraphs contain allegations that occurred over a year after Mr. Jones' termination and do not properly allege how the white workers were similarly situated to Mr. Jones. The profanity that resulted in Mr. Jones' termination was spoken in the presence of workers from a different company, EQT. This resulted in a complaint from EQT to Seven Point concerning Mr. Jones. The general allegations about other worker's use of profanity over a year after Mr. Jones' termination do not present comparable circumstances to plausibly establish that but-for Mr. Jones' race, the alleged discriminatory actions would not have occurred. Allowing paragraphs 69-74 to remain within the Amended Complaint serves no purpose but to prejudice Seven Point.

Seven Point's Motion to Strike paragraphs 69-74 of the Amended Complaint will be granted. Accordingly, such allegations will not be considered in the discussion of Mr. Jones' § 1981 claims that follow.

### B. § 1981 Race Discrimination Claim

Mr. Jones brings a § 1981 race discrimination claim against Seven Point, alleging that Seven Point discriminated against him based upon his race. Seven Point argues that Mr. Jones fails to allege facts to establish that he was intentionally discriminated against because of his race. (ECF No. 17, at 9). Seven Point further alleges that Mr. Jones has failed to allege facts to establish that his race was the "but for" cause of his termination. (*Id.* at 17). Mr. Jones argues that he alleges facts sufficient to establish that Seven Point discriminated against him based upon his race. (ECF No. 19, at 11). Mr. Jones further contends that Mr. Arbogast "admitted to [Mr. Jones] that he prefers not to speak to African American employees." (*Id.*) Mr. Jones argues that said alleged admission, along with Mr. Abrogast's treatment of Mr. Jones, establishes that but-for Mr. Jones' race, Seven Point would not have taken the alleged discriminatory actions against him. (*Id.*).

Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts. *See, e.g., Johnson v. Railway Express Agency*, 421 U.S. 454, 459-460 (1975). To state a prima facie case of racial discrimination under Section 1981, Plaintiff must show that: (1) he is a member of a racial minority; (2) that Defendant intended to discriminate against him on the basis of his race; and (3) that the discrimination concerned one of the activities enumerated in the statute. *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). A plaintiff asserting race discrimination claims under Section 1981 bears the burden of initially pleading and ultimately proving that racial bias

was the "but for" cause of the plaintiff's injury. *Comcast Corp. v. National Assoc. of African American-Owned Media*, 589 U.S. 327, 341 (2020).

Here, Seven Point alleges that Mr. Jones cannot establish that his race was the but-for cause of the actions taken against him. Mr. Jones alleges that Seven Point discriminated against him based upon his race in the following ways: (1) terminating Mr. Jones for his use of profanity at Battle Phrog but not disciplining the other white employees (2) Mr. Abrogst's accusations that Mr. Jones committed time theft and no call no shows, (3) Mr. Abrgoast's removal of Mr. Jones from the schedule, (4) Mr. Abrogast's refusal to conduct Mr. Jones' performance review, and (5) Mr. Abrogst's failure to accept Mr. Jones' doctor's excuse for the days that he took off from work. Mr. Jones argues that this alleged discriminatory conduct occurred because of his race. The only allegations Mr. Jones provides to support discriminatory conduct (2)-(5) are the racially neutral statements made by Mr. Abrogast calling Mr. Jones "angry and hostile," which, Mr. Jones attributed to his race. Mr. Jones further alleges that he understood Mr. Arbogast's "personal issues" for not wanting to conduct Mr. Jones' performance review as a continuing reluctance to speak to African American employees. Mr. Jones also alleges, in a conclusory fashion, that "Mr. Abrogast admitted to Plaintiff that his race and the race of other African American employees is an issue for him at work." (ECF No. 10, at ¶ 82). Such bare and conclusory allegations are not enough to establish that Mr. Jones' race was the but-for reason for the conduct. *See Gros v. R.T. Reynolds, Inc.* 487 F. App'x 711, 716 (3d Cir. 2012) (holding that allegations of wrongdoing followed by conclusory statements that defendant harbored discriminatory animus towards a plaintiff did not establish a plausible claim of intentional discrimination under § 1981).

As for alleged discriminatory conduct (1), Mr. Jones alleges that Seven Point's decision to terminate him for the use of vulgar language at Battle Phrog, but not the four EQT workers, establishes that Mr. Jones' termination occurred because of his race. However, notably, Mr. Jones alleges, that the white workers were employees of EQT, a completely different company than Seven Point. Seven Point seemingly had no authority to discipline the white workers from EQT. Absent this comparator evidence and given the conclusory nature of Mr. Jones' other allegations relating the alleged discriminatory actions to his race, Mr. Jones fails to plead sufficient facts to establish that Seven Point terminated Mr. Jones because of his race.

Thus, Mr. Jones cannot establish that, but-for his race, any of the alleged actions taken against him by Seven Point would have occurred. Seven Point's Motion to Dismiss Mr. Jones' § 1981 race discrimination claims, at Count I of the Amended Complaint, will be granted. As the court cannot see why amendment would be futile, Mr. Jones will be granted leave to amend this claim.

### C. § 1981 Retaliation Claim

Mr. Jones brings a § 1981 retaliation claim against Seven Point. Seven Point argues that Mr. Jones cannot establish a § 1981 retaliation claim, because he cannot establish an underlying violation of § 1981. (ECF No. 17, at 14). Seven Point further argues that Mr. Jones does not plead sufficient facts to establish a causal connection between his complaints of discrimination and his termination. (*Id.*). Mr. Jones argues that he has pled facts to establish a § 1981 retaliation claim. (ECF No. 19, at 12). Mr. Jones further argues that he engaged in protected activities in May 2022, January 2023, and May 2023, which resulted in adverse employment actions. (*Id.*).

To establish a retaliation claim under § 1981, a plaintiff must show that "(1) [he] engaged in [protected] activity . . .; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995). "In a [§ 1981] retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017).

For the reasons stated above, Mr. Jones fails to establish an underlying § 1981 violation and thus cannot establish a § 1981 retaliation claim. *See Castleberry*, 863 F.3d at 267. Furthermore, as to the alleged retaliatory actions that Mr. Jones did not receive a performance review and was removed from the employment schedule, Mr. Jones pled that Mr. Gonzalez conducted his performance review, and the scheduling issues were also resolved by Mr. Gonzalez after meeting with him. Even if Mr. Jones' had plead sufficient facts to establish an underlying § 1981 violation, he fails to allege facts connecting any of his prior complaints to his termination for his use of profanity at Battle Phrog.

Thus, Mr. Jones' fails to plead sufficient facts to establish any § 1981 retaliation claim. Seven Point's Motion to Dismiss Mr. Jones' § 1981 retaliation claim, at count II of the Amended Complaint, will be granted. As the court cannot see why amendment would be futile, Mr. Jones will be granted leave to amend this claim.

### D. Conclusion

For the reasons above, Seven Point's Motion to Dismiss and Motion to Strike will be granted in full. Paragraphs 69-71 of the Amended Complaint will be stricken. Mr. Jones' § 1981 race discrimination claim, at Count I of the Amended Complaint, will be dismissed, without

prejudice. Mr. Jones' § 1981 retaliation claim, at Count II of the Amended Complaint, will be dismissed, without prejudice. Mr. Jones has until on or before May 28, 2025, to file an amended complaint. If Mr. Jones does not file an amended complaint by said date, then the Clerk shall mark this case as closed.

DATE: May 15, 2025

Marilyn J. Horan
United States District Judge